**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**WILLIAM WEBB,**

                       **Plaintiff,**            **3:11-cv-94
                                                        (GLS)**

                    v.

**MICHAEL ASTRUE,** Commissioner of
Social Security,

                      **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Lachman, Gorton Law Firm | PETER A. GORTON, ESQ. |
| P.O. Box 89 | |
| 1500 East Main Street | |
| Endicott, NY 13761-0089 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | JASON P. PECK |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Mary Ann Sloan | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. Introduction

Plaintiff William Webb challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Webb's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On September 19, 2008, Webb, who suffers from, among other things, seizure disorder and anxiety disorder, filed an application for SSI under the Social Security Act ("the Act"), alleging disability since January 1, 2006.[1] (*See* Tr.[2] at 10, 23, 97-100.) After his application was denied, (*see id.* at 56-59), Webb requested a hearing before an Administrative Law Judge (ALJ), which was held on March 23, 2010. (*See id.* at 21-53, 60-

---

[1] In his complaint, Webb requests review of the Commissioner's denial of SSI and Disability Insurance Benefits (DIB). (*See* Compl. ¶ 1, Dkt. No. 1.) Inasmuch as no application for DIB appears in the record and no arguments are made with respect to same, the court ignores that reference.

[2] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 10.)

2

62.) On April 29, 2010, the ALJ issued a decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-4, 8-20.)

Webb commenced the present action by filing a complaint on January 26, 2011 wherein he sought review of the Commissioner's determination. (*See* Compl., Dkt. No. 1.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 9, 10.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 14, 16.)

### III.  **Contentions**

Webb contends that the Commissioner's decision is tainted by the application of improper legal standards and not supported by substantial evidence. (*See* Dkt. No. 14 at 7-20.) Specifically, Webb claims that the ALJ: (1) committed error by failing to find that listings 11.02 and 11.03 were satisfied; (2) "[im]properly considered [his] emotional impairments"; (3) wrongly evaluated his credibility; and (4) erred by failing to consult with a vocational expert. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is supported by

substantial evidence.  (*See* Dkt. No. 16 at 12-23.)

## IV.  Facts

The evidence in this case is undisputed and the court adopts the parties' factual recitations.  (*See id.* at 1-9; Dkt. No. 14 at 1-7.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here.  For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.  Listings 11.02 and 11.03

First, Webb contends that the ALJ erred by failing to find that his seizure disorder meets or equals listings 11.02 and 11.03.[3]  (*See* Dkt. No.

---

[3] Webb also contends that the "ALJ did not properly consider non-exertional limitations to [Webb]'s capacity to work caused by seizures."  (Dkt. No. 14 at 11.)  However, as Webb concedes, that argument is fully addressed elsewhere in his brief.  (*See id.*)  Accordingly, the court addresses that issue below where appropriate.  *See infra* Part VI.D.

4

14 at 7-11.)  The Commissioner argues that "when [Webb] was compliant with his medication, his medication levels were therapeutic, he was seizure free; therefore, [Webb] did not at any time meet or equal Listings 11.02 and 11.03."  (Dkt. No. 16 at 12-16.)  The court agrees with the Commissioner.

At the third step of the disability evaluation, the ALJ is required to determine whether the claimant's impairment(s) meet or equal an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  *See* 20 C.F.R. § 416.920(d); *Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 81 (2d Cir. 2003).  To satisfy listing 11.02, which pertains to epilepsy, Webb was required to demonstrate "convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment."[4]  20 C.F.R. pt. 404, subpt. P, app. 1 § 11.02.  Listing 11.03, also related to epilepsy, requires proof of "nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including

---

[4] The associated phenomena include (1) daytime episodes involving "loss of consciousness and convulsive seizures" or (2) "[n]octurnal episodes manifesting residuals which interfere significantly with activity during the day."  20 C.F.R. pt. 404, subpt. P, app. 1 § 11.02 (A) & (B).

all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment."[5]  *Id.* § 11.03.

Here, the ALJ's determination regarding the listings is supported by substantial evidence.[6]  Specifically, the ALJ correctly found that "[t]he record indicates that [Webb's] medication levels were at times low . . . and when [p]henytoin levels were therapeutic, as from September 30, 2008 to January 27, 2009, there were no reported seizures."[7]  (Tr. at 12.)  Thus, Webb failed to demonstrate that he suffered the necessary symptoms "in spite of at least 3 months of prescribed treatment."  20 C.F.R. pt. 404, subpt. P, app. 1 §§ 11.02, 11.03.

During the only period of time when Webb's blood level of phenytoin was therapeutic—i.e., evidence existed to indicate that he was taking his medication as prescribed, *see* 20 C.F.R. pt. 404, subpt. P, app. 1

---

[5] The associated phenomena include "alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day."  20 C.F.R. pt. 404, subpt. P, app. 1 § 11.03.

[6] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citation omitted).

[7] Phenytoin, also known as Dilantin, is medication used to control seizures.  *See O'Brien v. Astrue*, No. 07-CV-1153, 2011 WL 1298755, at *4 n.5 (N.D.N.Y. Mar. 31, 2011).

§ 11.00(A)—he reported no seizures.[8]  Moreover, although his prescription for phenytoin was filled from January 2009 to December 2009, (*see* Tr. at 345-48), Webb's blood levels reflected noncompliance with his medication regime every other time tested and, as pertinent here, during the times he presented with complaints of seizures.  (*See id.* at 174, 176, 185, 192, 199, 211, 220, 222, 234, 232, 310.)  Despite the fact that Webb's paramour, Amber Hurlbutt, kept a log supposedly documenting Webb's seizure activity from November 20, 2009 to January 4, 2010, (*see* Tr. at 43, 332-338), Webb's blood level of phenytoin indicated that he was not taking his medication as prescribed on November 9, 2009, let alone for the required minimum of at least three months.  (*See id.* at 291.)  Accordingly, the ALJ's decision regarding the listings should not be disturbed.

## B.   Severe Impairment Finding

Next, Webb argues that the ALJ erred by failing to find the following additional severe impairments at step two of the evaluation: panic disorder with agoraphobia, major depressive disorder, and attention deficit/hyperactivity disorder (ADHD).  (*See* Dkt. 14 at 11-15.)

---

[8] Webb's blood level of phenytoin on September 20, 2008 was 17.1; on October 29, 2008, it was 19.4; and on January 28, 2009, it was 18.9—all well within the therapeutic range of 10-20 mcg/mL.  (*See* Tr. 231, 294, 295.)

7

Concomitantly, Webb claims that the ALJ failed to assess the limiting effects of those supposedly severe impairments. (*See id.*) The Commissioner counters that "[e]ven if the ALJ should have included the panic attacks and agoraphobia in the list of severe impairments, this was, at most, a harmless error because the [residual functional capacity (RFC)] finding . . . adequately addressed any work-related limitations resulting from these diagnoses." (Dkt. No. 16 at 16-18.) The court is not persuaded by Webb's argument.

    A claimant has the burden of establishing that he has a "severe impairment," which is "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[u]nderstanding, carrying out, and remembering simple instructions; [and] [u]se of judgment." 20 C.F.R. § 416.921(b)(2)-(3). "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, No.

6:03-CV-0521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)). Indeed, when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities," a finding of "not severe" is warranted. SSR 85-28, 1985 WL 56856, at *3 (1985); *see* 20 C.F.R. § 416.921(a). Consistent with that notion, only *de minimis* claims may be screened out at step two of the analysis. *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).

In this case, the ALJ's determination regarding the severity of Webb's impairments is supported by substantial evidence. Webb was diagnosed with several impairments, only some of which the ALJ found to be severe. Psychologist Robert Russell concluded that Webb suffers from "[p]anic and agoraphobia" and major depressive disorder. (Tr. at 306.) Mary Ann Moore, also a psychologist, opined that Webb has panic disorder without agoraphobia,[9] depressive disorder, and ADHD. (*See id.* at 324.) Webb was also diagnosed with panic disorder without agoraphobia by psychologist Sara Long, (*see id.* at 241), and depression and panic by his

---

[9] The court highlights that Webb has mistakenly misstated Moore's diagnosis in his brief. Webb claims that Moore diagnosed him with "panic disorder with agoraphobia," when, in reality, she diagnosed him with "[p]anic disorder without agoraphobia." (*Compare* Dkt. No. 14 at 13, 15, *with* Tr. at 324.)

9

treating physician, Arvin Aranda.  (*See id.* at 320).

Only Russell, Moore, and Long offered opinions about the severity of the conditions not found to be severe by the ALJ.  Russell, in conclusory fashion, found that Webb "could not be expected to work due to his panic disorder and agoraphobia which is quite severe."  (*Id.* at 306.)  Moore opined that Webb is "moderately limited"—meaning that he is unable to function 50% of the time—in his ability to perform complex tasks independently, maintain attention and concentration for rote tasks, and regularly attend to a routine and maintain a schedule.  (*Id.* at 324.)  However, Moore noted normal functioning as to Webb's ability to follow, understand, and remember simple instructions and directions.  (*See id.*)  Long found that Webb's "psychiatric problems . . . may interfere with [his] ability to function on a regular daily basis," but, importantly, that he is able to "follow and understand simple directions and instructions and to perform simple tasks independently[,] maintain attention and concentration[,] maintain a regular schedule, . . . learn[] new tasks, perform[] complex tasks, and mak[e] appropriate decisions depending on context."  (*Id.* at 240.)

The essence of the opinions of Moore and Long is that, considering

10

all of Webb's psychiatric impairments, he can still understand, carry out, and remember simple instructions, and otherwise demonstrates sufficient abilities and aptitudes necessary for most jobs. *See* 20 C.F.R. § 416.921(b). Those opinions are contrary to Russell's and entitled the ALJ to accord no weight to Russell's report as she apparently did. *See Thompson v. Comm'r of Soc. Sec.*, No. 7:10-CV-1085, 2011 WL 5080239, at *10 (N.D.N.Y. Aug. 18, 2011); (Tr. at 12). Thus, although the ALJ could have more thoroughly explained her treatment of the issue, she did not err by failing to find severe impairments beyond those expressed in her decision.

### C. Credibility Determination

Webb next argues that the ALJ improperly evaluated his credibility. (*See* Dkt. No 14 at 15-20.) In particular, Webb alleges: (1) that the ALJ's credibility determination is factually inaccurate with respect to his alcohol consumption, "the fishing episode," and his ability to play video games/inability to sit still; and (2) not sufficiently specific to withstand review. (*See id.*) This argument also fails.

An ALJ must consider a claimant's subjective complaints of pain in gauging his RFC. *See* 20 C.F.R. § 416.945(a)(3). However, "[a]n

11

individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). The Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 61 Fed. Reg. 34483, 34485-86 (July 2, 1996). Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations regarding limitation as long as she sets forth her "reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the ALJ's determination as to credibility is supported by substantial evidence and is not the product of legal error. The ALJ found Webb to be "only partially credible" in light of his "poor work history [and]

12

the overwhelming impression of innumerable inconsistencies." (Tr. at 14.) The ALJ's finding was premised upon inconsistencies in four categories: drinking, fear of seizures, mental focus, and lack of energy or motivation. (*See id.* at 14-15.) Turning to Webb's alcohol use, the record is wildly inconsistent and supports the ALJ's finding. At the hearing, Webb testified that he stopped drinking "[a]bout two years ago," which would have been in March 2008. (*Id.* at 21, 29.) However, in April 2008, he drank "as much as 8 to 10 beers during [the] entire day" and reported that he, on occasion, drank as many as 18 beers in a single day. (*Id.* at 174.) More importantly, Webb reported that he stopped drinking alcohol on various dates—including February 2008, March 2008, and October 2008—further demonstrating inconsistency and serving as evidence that he was dishonest about his cessation. (*See id.* at 225, 237, 302.) Finally on this point, Webb admitted to an emergency room physician, in July 2008, that he drank socially as of that date. (*See id.* at 209.)

    The ALJ also discounted Webb's credibility because of inconsistency surrounding his subjective fear of seizures. (*See id.* at 15.) As recounted by the ALJ, Webb suggested during the hearing that his ailments made him fearful of, among other things, falling into a river where he fishes. (*See*

13

*id.* at 32-35.)  To some extent, Webb's testimony was belied by the fact that, despite his awareness of his penchant for seizures and anxiety attacks, he opted to go fishing anyway.  (*See id.* at 32, 46.)

Next, the ALJ found Webb's testimony to be inconsistent regarding his ability to "sustain mental focus or attention."  (*Id.* at 15.)  That finding was also supported by the record inasmuch as Webb testified that he has some trouble paying attention, yet he plays video games four times a week, three hours at a time, and "[a]ll day, all, all day."  (*Id.* at 40-41.)

Similarly, the ALJ's determination that Webb was incredible regarding his lack of energy or motivation was amply supported by substantial evidence.  (*See id.* at 15.)  While Webb claimed that he gets "antsy and want[s] to get up and walk around" after watching television for only 10 minutes, he also explained that he was able to play video games "all day" long.  (*Id.* at 40, 41.)  Thus, the ALJ sufficiently set forth reasons, which were well grounded in the record, for finding Webb to be only partially credible.

### D.     Vocational Assessment

Lastly, Webb contends that the "ALJ did not properly determine the case without calling upon the services of a vocational expert." (*See* Dkt.

14

No. 14 at 20.)  Specifically, Webb argues that an ALJ is required to consult with a vocational expert "in every case where a plaintiff has significant non-exertional impairments."  (*Id.*)  And further that, because Webb suffers from "frequent and unpredictable seizures followed by lengthy recovery periods," the ALJ should have concluded that his ability to perform basic job duties and maintain employment was affected, necessitating consultation with a vocational expert.  (*Id.*)  Again, the court disagrees with Webb.

The appropriateness of applying "the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).  Indeed, the ALJ is vested with discretion regarding whether to use a vocational expert.  *See* 20 C.F.R. § 404.1566(e).  But "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments" and, accordingly, the ALJ should consult with a vocational expert before making a determination as to disability.  *Bapp*, 802 F.2d at 605 (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)).

As pertinent to Webb's nonexertional limitation regarding the

15

demands of unskilled work:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15, 1985 WL 56857, at *4 (1985). And as to Webb's environmental limitations arising from his seizure disorder, the Commissioner has previously ruled that "[a] person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels." SSR 85-15, 1985 WL 56857, at *8.

Here, the ALJ determined, and the court agrees, that Webb's nonexertional impairments will not significantly limit the range of work he can perform based upon his exertional capabilities. (*See* Tr. at 15-16.) The ALJ found that Webb has a RFC to work at any exertional level, but provided the following nonexertional limitations:

> reasonable avoidance of unusually high stress or

> danger work, i.e., doing routine daily tasks and duties which are not too fast-paced and which do not significantly change in pace or location on a daily basis, and which does not require more than occasional contact with supervisors, co-workers, or the general public, and which does not require exposure to heights, or hazards such a[s] knives or saws.

(*Id.* at 14.)  Webb's ability to meet the demands of unskilled work are demonstrated by ample evidence in the record.  Specifically, Webb was found to have sufficient understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  (*See id.* at 263-64.)  Medical consultant P. Kudler, who examined Webb after he filed his claim for benefits, found that Webb "can do . . . work in a low contact setting and simple tasks."  (*Id.* at 265.)  As explained above, height restrictions do not have a significant impact on the jobs available to Webb either.  Thus, the ALJ's decision to forego consultation with a vocational expert is supported by substantial evidence.

### E.   Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

### VII.  Conclusion

17

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Webb's complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 22, 2012
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court